IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JAMES J'MORI JONES,           )
                              )
            Petitioner,       )
                              )        1:16CV76
      v.                      )        1:13CR198-1
                              )
UNITED STATES OF AMERICA,     )
                              )
            Respondent.       )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Petitioner James J'Mori Jones filed a motion and memorandum (Docs. 52, 53) pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Petitioner was indicted for possession of a firearm by a convicted felon (Count One) and possession of an unregistered firearm (Count Two). (Doc. 1.) A superseding indictment was later filed charging him with possession of a firearm by a convicted felon (Count One), possession of an unregistered firearm (Count Two), possession of a controlled substance with the intent to distribute (Count Three), and possession of a firearm in furtherance of drug trafficking crimes (Count Four). (Doc. 14.) On December 11, 2013, Petitioner was convicted after a jury trial of Count One, possession of a firearm by a

convicted felon, and was acquitted of Counts Three and Four.[1]
(Doc. 25.) He was sentenced to fifty-four months of
imprisonment. (Doc. 30.) His appeal was unsuccessful. See United
States v. Jones, 622 F. App'x 195, 198 (4th Cir. 2015).
Petitioner next filed the instant § 2255 motion. (Docs. 52, 53.)
The court denied Petitioner's second ground for relief and held
an evidentiary hearing on Petitioner's remaining ground for
relief. (Doc. 66; Minute Entry 01/05/2018.) The matter is now
ready for a ruling.

I.    **Petitioner's Grounds**

Petitioner's remaining ground for relief is one of
ineffective assistance of counsel. (Doc. 52, Ground One.)

A.    **Evidentiary Hearing**

1.    **J'Raad Amajh-Malik Simpson**

At the evidentiary hearing on January 5, 2018, Petitioner's
brother J'Raad Amajh-Malik Simpson ("Simpson") testified that he
met with Petitioner and Petitioner's counsel Greg Davis and they
discussed a plea offer and Petitioner's sentencing exposure.
They discussed a drug program, credit for time served, and
halfway house placement. Simpson stated that Davis said "[t]hat

_____

[1] Count Two was dismissed at trial. (Minute Entry
12/10/2013.) Petitioner was represented at all pertinent points
by Assistant Federal Public Defender Gregory Davis (hereinafter
"counsel" or "Davis").

my brother would receive 12 months off of the drug program."
(Id.) Simpson remembered this, he said, because they "based
[the] case on [this] because [counsel] let us know [it] on every
occasion[.]"

Simpson also testified about a second plea offer.
Petitioner would plead guilty to the gun charge, but receive a
sentence of "maybe" three years, based on the drug charge.
According to Simpson, counsel again said that Petitioner would
"receive 12 months off for the drug program."

Simpson testified to a third plea offer, this one made
during trial, in which Petitioner would plead guilty to the drug
charge. Petitioner considered this offer, according to Simpson.
However, Simpson testified further that counsel "really believed
that we were going to beat all the charges" and "worst case
scenario" Petitioner would still get twelve months off of his
sentence for the drug program, as well as time off for good
conduct and time in a halfway house. According to Simpson, he
and Petitioner understood counsel to be saying that Petitioner
would "get the same amount of time" if he were convicted as if
he took the third plea offer.

On cross-examination, Simpson admitted he had prior
criminal felony convictions and that he loved his brother and
was concerned about his best interests. Simpson next testified

that his brother always contended that he was not guilty of the firearm charge. Simpson too insisted that Petitioner was "not guilty of the firearm" charge. Simpson testified further that at trial, Petitioner testified that he possessed the drugs, but that they were not for distribution. Simpson stated that his brother's position had been that he was not guilty of possessing a firearm, nor of intent to distribute. Simpson testified he never heard Davis mention an _Alford_ plea. Simpson stated that, according to counsel, in the "worst case scenario" the difference between pleading guilty and being convicted was somewhere between one year and "a couple of months."

Simpson testified that he "guess[ed]" he was aware that, if convicted, Petitioner faced a mandatory ten-year sentence on Count Four, the § 924(c) charge. However, Simpson indicated that he and his brother never really "thought about ten years" because counsel was "pretty confident that we were going to win trial." Simpson testified, he and his brother "believed that things looked pretty good" when the case was with the jury. There was a feeling that Petitioner could "beat these charges altogether" because they "felt that from the onset" that Petitioner "was innocent."

## 2. **Cathy Joe Jones**

Petitioner next called his mother, Cathy Joe Jones ("Ms. Jones"), to testify. Ms. Jones remembered attending office visits with her son and his counsel Mr. Davis. At the first office visit, Ms. Jones testified that counsel told Petitioner that if he received more than "say, three years," he "would" get the 12 months off for completing a drug program while in prison.

According to Ms. Jones, at a different office meeting Ms. Jones attended with Petitioner and counsel, counsel again stated that there was a drug program and Petitioner "could do a 12 months reduction in his sentence[.]"

On cross-examination, Ms. Jones explained that counsel had spoken about "the different charges, the time that each could possibly carry and the minimum to maximum length of [Petitioner's] sentence for each of the charges and the different ways he could reduce his sentence, or at least the expected amount of time." Ms. Jones stated that, counsel said that Petitioner could participate in the drug program and that "you'll] get 12 months off your sentence if you complete it successfully." Beyond this, Ms. Jones testified that counsel provided Petitioner with "specific sentencing lengths per charge that were probable."

Ms. Jones next admitted that she had filed an affidavit in this case stating that Petitioner said that counsel "told [Petitioner] that if the jury found him guilty, he would receive a sentence of no[] more than one year more than if he took the plea agreement[.]" (Doc. 53 at 16.) Ms. Jones clarified that "[w]ith regards to the offer being based on a drug charge as opposed to a firearms charge. The two years was for a drug charge. If he went on the firearm charge in front of the jury and was found guilty, then he would get no more than a year." Ms. Jones did not realize that Count Four carried a mandatory ten-year sentence. Ms. Jones admitted she did not "know all the facts."

### 3.  **Petitioner**

Petitioner testified that he, his mother, and his brother attended a first office visit with his counsel Greg Davis. They discussed a plea offer in which he would plead guilty to possession of a firearm by a convicted felon. Petitioner further testified that Davis told him that his guideline range would be "five or six" years "or something like that." Petitioner stated that Davis told him that Petitioner "would receive 12 months for the drug treatment so long as you got 36 months." Davis also spoke with Petitioner about placement in a halfway house and about serving 85 percent of his sentence.

Petitioner testified that given what Davis had told him, he thought he would get "12 months off [his] sentence if [he] got convicted of a firearm offense." Petitioner admitted he "really didn't even consider taking the plea because [he] felt [he] was innocent of the gun [charge.]"

Petitioner explained further that there was a second similar meeting. Davis presented Petitioner with a second plea agreement. The difference between the two plea offers was "a couple of years." "It was 21 months to 27 months opposed to 50 or 60 months or 60 to 70 some months." Petitioner testified that Davis told him that so long as the judge sentenced him to 36 months or more, then he could receive twelve months off his sentence in the drug program.

Petitioner next clarified that in a phone conversation with Davis leading up to this second meeting, he had agreed to accept the second plea offer. According to Petitioner, Davis stated that Petitioner's guideline range would be between "two or three years" and that Petitioner would also get "the 12 months off." However, Petitioner clarified further, when he learned more about the plea at this second office visit, he changed his mind and decided to reject it.

Petitioner stated that at this second office meeting, Davis told him that "if you were convicted of the gun and your

sentencing guideline here would be between four and five years, and you – if you took this plea, you know, you take the 12 months off, it would only be a couple months difference[.]" In light of this, Petitioner testified, he changed his mind and said, "well, I still feel as I'm innocent, feel like I'm innocent of the gun, I just withdrew my plea. I told him I didn't want to do it." Petitioner stated that if he had known he was not be eligible for the reduction, he would have accepted the plea for two or three years.

On cross-examination, Petitioner acknowledged that when he was arrested in this case, he admitted possession of the firearm to the officers. Petitioner stated further that when he testified at trial, he testified that the gun was not his. Petitioner explained that he had initially admitted possession of the firearm to protect his girlfriend. Petitioner next acknowledged that at trial he testified that the cocaine he had possessed was for personal use. Petitioner maintained that he did not possess the firearm, or the cocaine with an intent to distribute.

When asked if at the time of the indictment, he thought he was guilty of any of the charges, Petitioner said he had a "feeling" that he was not guilty but he "wasn't 100 percent aware." Petitioner testified that if someone were going to throw

him into prison for twenty years, "I'm going to start reconsider[ing] my innocence and guilt."

Petitioner then testified that with regard to count one of the indictment, possession of a firearm by a convicted felon, his opinion now was the same as it had been at the time of the indictment: he was not guilty. Petitioner then acknowledged that Davis got Count Two, possession of an unregistered firearm, dismissed at trial.

Petitioner was next asked if he was guilty of Count Three, possession with the intent to distribute cocaine base. He testified that the jury had found him not guilty. Petitioner was asked how he felt, how he thought, and what he said about whether he was guilty of this charge. He stated he could not recall. Petitioner testified that he recalled "almost considering taking the plea for that prior to the jury's verdict" but now he fully accepted the jury's verdict. Petitioner admitted that he "can't even really remember what happened two weeks ago[.]" When asked why Petitioner could remember what Davis told him about the drug treatment program, but could not remember whether he was guilty of this charge, Petitioner responded that he had considered taking a guilty plea on the gun and the drug charges. When the court pointed out to Petitioner that the question was not what Petitioner had

considered, but if he was guilty of possession with intent to distribute, Petitioner said he was not guilty.

Petitioner next testified that he was not guilty of Count Four, the § 924(c) charge. Petitioner then explained that his understanding had been that if he had been convicted of only possession of a firearm by a felon, the difference between a plea agreement and an adverse jury verdict was at most one year. He testified that he thought that Count Four would only subject him to a five-year minimum sentence. Petitioner stated that Davis did not tell him until "[m]aybe a couple of days before trial" that if he was found guilty of Count Four, there was a mandatory ten-year sentence. Despite the fact that he could get five or ten years on Count Four, he decided to proceed to trial.

Petitioner next testified that he recalled three plea offers. The first, drafted in August of 2013, would have had him plead guilty to being a felon in possession of a firearm in return for dropping the remaining charge in the initial indictment. (Doc. 69-1, Attach. 1.) Petitioner said counsel communicated this offer to him, and provided him an estimated sentencing range, but that he did not give this offer serious consideration.

Petitioner was next presented with a draft of a plea offer dated October 3, 2013, which was made after the superseding

indictment was filed. (Doc. 69-2, Attach. 2.) Petitioner indicated that he was aware that this plea offer would have him plead guilty to being a felon in possession of a firearm and that it also contained an agreement from the Government that the proper guideline range was 21 to 27 months of imprisonment. Petitioner explained that Davis presented him with this plea, and that he considered it, but that he turned it down.

Petitioner then testified that he did not remember receiving a phone call from Davis about a week before trial with a plea offer in which he would plead guilty to the drug count alone, with all of the other counts being dismissed. Petitioner next explained that he did recall that during trial there was a plea offer to plead guilty to the drug charge and receive a 21- to 27-month sentence, with all other counts dismissed. He explained that, he wanted to discuss it with his family, and that he ultimately decided to turn the plea down. Petitioner testified that he did not recall if Davis explained that if he pled guilty, he would be asked if he was in fact guilty. Petitioner stated that he was "not sure" if he could have admitted to the court he was "actually guilty of a crime."

On redirect examination, Petitioner testified that he knew what an Alford plea was. Petitioner testified that he considered pleading guilty to get the sentence that he wanted, even though

he might not have been actually guilty. He testified that his eligibility to have his sentence reduced by twelve months by completing the drug program impacted this decision. Petitioner also testified that he was not permitted to participate in the drug program while in prison and receive a sentence reduction. He explained that he was told that because he was convicted of a § 922(g) offense he was ineligible for that reduction. Petitioner stated that if he had known before he was found guilty at trial that he could not participate in "this 12 month off drug program," he would have accepted the plea.

On recross-examination, Petitioner admitted that he was never offered an <u>Alford</u> plea.

### 4. **Greg Davis**

Petitioner's former attorney, Greg Davis, testified next. Davis has been with the federal public defender's office for almost 25 years and has practiced criminal law for more than 40 years. He has tried 100 cases to a jury and has handled many more with regard to guilty pleas.

Davis testified that the Government's first plea offer, drafted in August of 2013, was to plead guilty to the charge in the initial indictment of possession of a firearm by a convicted felon. (Doc. 69-1, Attach. 1.) Davis explained that he presented this plea offer to Petitioner at a meeting at which his mother

and brother were also present. Davis explained that they discussed estimates of his guideline range and how a guilty plea hearing would take place. According to Davis, prior to this meeting, Petitioner had indicated he would take the plea offer, but that ultimately he decided he could not plead guilty to something he did not do. Davis testified that at one point, Petitioner's brother indicated he was glad that Petitioner did not take the plea for something that he did not do.

Davis testified that he told Petitioner "that the charge that they were proposing he plead guilty to would not automatically exclude him from participating in the intensive drug treatment program, that he might get some credit off – credit against his sentence if he were allowed to participate in that, but that was just he might. I never told him that he would." Davis testified that, consistent with his practice, in explaining to Petitioner the various possible sentencing ranges and enhancements that could apply, he spoke in estimates. Davis testified that he never told Petitioner he would receive one year off his sentence for drug treatment and that, if he had told him anything to this effect, it would "probably be more because generally if you get into the intensive drug treatment program, you can get as much as 18 months off." Davis testified that he has since learned that "if you plead to a felon in

possession and there's drugs involved, that that may cause the Bureau of Prisons not to give you any time off."

Davis next identified the Government's second plea offer, made after the Government filed a superseding indictment. (Doc. 14; Doc. 69-2, Attach. 2.) The plea offer was to allow Petitioner to plead guilty to possession of a firearm and, in return, the remaining charges would be dismissed. The Government also agreed that the guideline range at sentencing should be 21 to 27 months of imprisonment. Davis testified that he communicated this offer to Petitioner and discussed it and the sentencing range, but Petitioner said he could not plead guilty to something he did not do.

Davis next testified that on December 4, 2013, the Government made another plea offer. Davis memorialized this offer in an email he sent to himself. (Doc. 69-3, Attach. 3.) Davis explained that the offer was made orally from the prosecutor and Petitioner would enter a guilty plea to possession with intent to distribute the drugs in return for the dismissal of the other charges. Davis explained that he responded to the prosecutor that Petitioner's position was that the crack was for personal use. Petitioner's position, according to Davis, was that the digital scales photographed in

Petitioner's shoes had been placed there by the police. Davis explained that Petitioner rejected this plea.

Davis explained further that before Petitioner decided whether to accept or reject the plea, he informed Petitioner that the § 924(c) charge carried a ten-year mandatory minimum sentence. Davis did this, he testified, because Petitioner had indicated that he thought the penalty was five years. Davis also testified that this information did not make any difference to Petitioner, who stated he was not going to plead guilty to something he was not guilty of.

Davis also testified that there was a final plea offer at trial made while the jury was deliberating in December of 2013. Davis explained that the prosecutor renewed his second offer, that is, to plead to the felon in possession of a firearm charge, but to have a guideline range of 21-27 months. (Doc. 69-2, Attach. 2.) Davis testified he communicated this to Petitioner, reminded him what they had previously discussed about it, and that Petitioner then rejected it.

Davis then testified that he never guaranteed Petitioner that he would receive a year off his sentence for the drug program, regardless of what he pled guilty to. Davis testified further that he never told Petitioner that the only difference between pleading guilty to any of the offers and being found

guilty of what he was charged with in the superseding indictment was a year or a few months. Davis stated that he would not have said this because the § 924(c) count carried a ten-year mandatory minimum.

On cross-examination, Davis testified that he remembered "making . . . statements to the defendant that he might be eligible for some sort of reduction based on completing [the drug] program." Davis also admitted that the affidavit he filed in anticipation of this hearing stated that "'[a]t no time was an offer made to allow petitioner to plead solely to the drug count of the indictment.'" (Doc. 57-1, Attach. A.) Davis acknowledged that this statement was in conflict with his email to file indicating an offer from the Government in which Petitioner would be permitted to plead guilty to the drug offense. Davis explained that he initially could not find this email to file, only found it after he filed his affidavit in this case, and then he did not "bother to change the affidavit but mentioned it" now. Davis did not recall whether he discussed with Petitioner "how he might plead guilty pursuant to an <u>Alford</u> plea[.]"Davis also identified a fax he sent to Petitioner's state attorney, indicating that at one point Petitioner intended to plead guilty to the second plea offer.

On redirect examination, Davis affirmed that he had written in his affidavit that when Petitioner first indicated a willingness to plead guilty to the first plea offer, Davis reminded Petitioner he would be under oath when he answered questions by the court and that he would be asked if he was pleading guilty because he was in fact guilty. (Doc. 57-1, Attach. A at at 4-5.) Davis further indicated to Petitioner that if he answered yes, he would be admitting that he possessed the shot gun. Davis testified that no Alford plea was offered.

## II. Discussion

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To demonstrate inadequate performance, the defendant "must show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." Strickland, 466 U.S. at 688.

Additionally, "a defendant has the right to effective assistance of counsel in considering whether to accept [a plea

bargain]. If that right is denied, prejudice can be shown if loss of the plea opportunity led to a trial resulting in . . . the imposition of a more severe sentence." Lafler v. Cooper, 566 U.S. 156, 168 (2012). Prejudice in the context of a rejected plea bargain requires:

> [A] defendant [to] show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Id. at 164.

In judging credibility "trial courts consider 'variations in demeanor and tone of voice.'" Rahman v. United States, No. 7:08-CR-126-D, 2013 WL 5222160, at *5 (E.D.N.C. Aug. 27, 2013) (unpublished) (quoting Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985)), Report and Recommendation adopted by 2013 WL 5230610 (E.D.N.C. Sept. 16, 2013) (unpublished). "In addition, '[d]ocuments or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" Rahman, 2013 WL 5222160, at *5 (quoting Anderson, 470 U.S. at 575; and citing United States v. Marcavage, 609 F.3d 264, 281 (3d Cir. 2010)). "Additional

considerations can include the witness's motive to lie and the level of detail in the witness's statements." Id. (citing United States v. Wilson, 624 F.3d 640, 665 (4th Cir. 2010)).

Here, Petitioner contends that counsel was constitutionally ineffective during the plea process. (Doc. 52, Ground One; Doc. 53 at 5-7, 14-18; Doc. 60 at 1-6.) Petitioner contends that counsel misadvised him as to his sentencing exposure. (Id.) This misadvice, Petitioner alleges, caused him to reject a plea offer and go to trial, whereupon he was convicted. (Id.) At sentencing, Petitioner continues, he received a longer sentence than he would have otherwise received had he accepted a plea offer. (Id.) Petitioner asserts that had he been properly advised in the first instance — particularly that he was ineligible for a sentence reduction upon the successful completion of a prison drug program[2] — he would have accepted a plea offer. (Id.) For the following reasons, Petitioner's ground lacks merit and will be denied.

## III. __The Court's Findings of Fact and Conclusions of Law__

### A.    __The Government Made Four Plea Offers__

First, the court finds as fact that there were four plea offers made to Petitioner prior to the jury reaching its

---

[2] In certain circumstances, after completion of a residential drug abuse program, a petitioner may be eligible for a sentence reduction. See 18 U.S.C. § 3621(e)(2)(B).

verdict. The first, drafted in August of 2013, permitted Petitioner to plead guilty to Count One of the indictment, felon in possession of a firearm. (Doc. 69-1, Attach. 1 at 1.) Both Petitioner and Davis testified to this and a draft of this offer was submitted at the hearing.

The second plea offer, drafted in October of 2013, permitted Petitioner to plead guilty to Count One of the superseding indictment, felon in possession of a firearm. (Doc. 69-2, Attach. 2 at 1.) In return, in pertinent part, the Government agreed not to oppose a motion to dismiss the remaining charges and also agreed to a sentencing range of 21-27 months. (Id. at 5-6.) Both Petitioner and Davis testified to this and a draft of this second plea agreement was submitted at the evidentiary hearing.

The third plea offer, made about a week before trial on December 4, 2013, permitted Petitioner to plead guilty to possession with the intent to distribute cocaine base. (Doc. 69-3, Attach. 3.) In return, in pertinent part, the Government agreed to the dismissal of the remaining charges. (Id.) Petitioner does not contest that this offer was made, though he testified at the hearing that he does not recall it being made. Nevertheless, Davis' email to file memorialized the plea offer

the day it was made and explains how it was relayed to Petitioner. (Id.)

The fourth plea offer, made while the jury was deliberating in December of 2013, was a renewal of the Government's second offer. Petitioner's brother J'Raad Simpson, AFPD Davis, and Petitioner testified as to a fourth plea offer.

Last, the court also finds as fact that none of the offers described above entitled Petitioner to an Alford plea. There is no evidence on record that any such plea offer was made to Petitioner and, in fact, Petitioner himself admits that no Alford plea was ever offered.

### B. Petitioner Rejected All Four Plea Agreements

Second, the court finds that Petitioner rejected all four plea agreements because he believed he was innocent of the crimes to which the Government requested him to plead guilty. The court finds that Petitioner was ultimately unwilling to plead guilty to a crime he did not believe he committed. It was Petitioner's belief in his innocence, and his belief in the weakness of the Government's case, and not what Davis told him about a drug program sentence reduction, that led Petitioner to reject the plea agreements and go to trial. The court also finds as fact that Petitioner decided to risk an acquittal at trial,

and receive no term of imprisonment, rather than enter a guilty plea and face a definite period of incarceration.

A considerable amount of evidence supports these findings. For example, Petitioner himself testified repeatedly that he did not think that either prior to trial or now that he was guilty of any of the charged crimes. Petitioner testified further that he was "not sure" if he could have stood in front of the court and said that he was actually guilty of a crime.

Petitioner's brother also testified that Petitioner's position throughout these proceedings had been that he was not guilty of possessing a firearm, nor was he guilty of possession with intent to distribute. Simpson acknowledged further that both he and his brother "believed that things looked pretty good" when the case was with the jury and there was a feeling that Petitioner could "beat these charges all together." And, in fact, at that point, Count Two of the superseding indictment, possession of an unregistered firearm, had already been dismissed, along with the maintaining a drug involved premises component of Count Four, the § 924(c) count. (Doc. 40 at 95; Minute Entry 12/10/2013.) Davis also testified that Petitioner said he would not plead guilty to a crime he did not commit.

Beyond this, Davis' December 4, 2013 email-to-file is also revealing. Davis wrote this email soon after relaying the

Government's third plea offer to Petitioner. (Doc. 69-3, Attach. 3.) Again, the Government's third plea offer permitted Petitioner to plead guilty to possession with the intent to distribute cocaine base. (Id.) In his email, Davis indicates that Petitioner's position was that he possessed the crack for personal use, not distribution. (Id.) The email also indicates that Davis made sure to explain to Petitioner that if he went to trial and was convicted of the § 924(c) charge, he faced an additional ten-year sentence in addition to any other sentence he received. (Id.) The email indicates that this made no difference to Petitioner, who still intended to plead not guilty and go to trial. (Id.) For all these reasons, the court finds that Petitioner was unwilling to plead guilty to a crime he did not believe he committed, and it was his belief in his innocence, not what Davis told him about a drug program, that led him to reject the plea agreements and proceed to trial.

C.   **Davis Did Not Advise Petitioner That He Would Be Entitled to a Sentence Reduction, Nor Did He State That There Was Little Difference in Sentencing Between a Guilty Plea and an Adverse Jury Verdict**

Nevertheless, there remains a discrepancy as to exactly what Davis said. Davis testified that he told Petitioner "that the charge that they were proposing [Petitioner] plead guilty to would not automatically exclude him from participating in the intensive drug treatment program, that he might get some credit

-23-

off – credit against his sentence if he were allowed to participate in that, but that was just he might. I never told him that he would." Petitioner, his brother, and his mother all testified that Davis basically guaranteed that Petitioner was entitled to participate in the drug program and receive a one-year sentence reduction.

The court finds Davis' testimony the more credible here. As a general matter, Davis strikes the court as the most disinterested individual to testify at the evidentiary hearing and he had little reason to fabricate his narrative. Additionally, Davis' recollection of events was specific and well-informed, suggesting that his statements were truthful. In contrast, Petitioner stated that he "can't even really remember what happened two weeks ago." Petitioner's mother admitted that she did not really understand the facts of his case, and Petitioner's brother at times had difficulty recalling its specifics.

Moreover, Davis, Petitioner, and his mother all testified that Davis spoke in terms of estimates when discussing possible sentencing ranges Petitioner might receive. Davis testified that this was his usual practice. It is unlikely that Davis would provide estimations of Petitioner's sentence to Petitioner, while at the same time guaranteeing Petitioner that he would

receive a year reduction through a drug program run by the
Bureau of Prisons.

Beyond this, Petitioner, his mother, and his brother all
testified that Davis told them that the difference between an
adverse jury verdict and the acceptance of a guilty plea was
between a few months and a year. Davis denies this. Davis is the
more credible here as well for the same reasons set forth above.
It is also unlikely that Davis would make any such
representation given his conclusion that Petitioner faced a ten-
year mandatory minimum sentence for the § 924(c) charge. See 18
U.S.C. § 924(c)(1)(B)(i) (ten-year minimum for possession of a
short-barreled shotgun in furtherance of drug trafficking
crime).

### D.  Petitioner Was Found Ineligible for the Drug Program

The court also finds as fact that while serving his
sentence in this case, Petitioner was informed by the Bureau of
Prisons that he was ineligible to reduce his sentence by
participating in the drug treatment program.

### E.  Petitioner Has Not Demonstrated Ineffective Assistance

As noted, to prove ineffective assistance of counsel, a
petitioner must establish, first, that his attorney's
performance fell below a reasonable standard for defense
attorneys and, second, that he was prejudiced. See Strickland,

466 U.S. at 687. Nevertheless, where, as here, it is clear that no prejudice would have resulted even if the attorney's representation was deficient, a court need not address the first prong. Strickland, 466 U.S. at 697.

In this case, Petitioner has demonstrated at best that Davis erred by telling him he might be able to participate in a drug treatment program and reduce his sentence somewhat. However, even assuming this were to satisfy the first prong of Strickland and constitute unreasonable performance, Petitioner has failed to demonstrate prejudice. This is because, as explained above, Petitioner went to trial and risked conviction because he believed he was not guilty of the charged crimes and not because of anything Davis might have told him about a drug treatment program and a sentence reduction. And, as explained earlier, there is a great deal of evidence in this case supporting the conclusion that even if Petitioner knew he would ultimately be ineligible to receive any drug treatment related sentence reduction, he would have still rejected all of the plea offers presented to him and gone to trial.

Put differently, this evidence supports the conclusion that Davis' statements about the drug program to Petitioner were not material in his decision to go to trial. The court finds that any omissions or misstatements by counsel here regarding the

drug program were not prejudicial because there is no reason to

believe that had Petitioner been fully informed as to his

ineligibility to the drug program, he would have pled guilty.[3]

---

[3] There does not seem to be any genuine dispute that the
BOP's intensive drug treatment program regulations do not permit
this Petitioner an early release as part of a successful
participation in the program. See 28 C.F.R. § 550.55(b)(5)(ii),
(which precludes inmates convicted of a firearm possession
offense from early release). For purposes of this order, this
court assumes any advice that Petitioner "may" be eligible for
early release would be problematic for the firearm conviction as
Petitioner was not eligible for early release following
conviction of the 18 U.S.C. § 922(g)(1) offense. However, this
court notes that at least once, Petitioner received a plea offer
for an offense which may have allowed him to receive an early
release. More significantly, Petitioner does not contest Davis'
statements that upon conviction by a jury of the three counts
submitted to the jury, Petitioner faced a sentence under 18
U.S.C. § 924(c) that could include a consecutive sentence of ten
years. This court further finds a conviction under 18 U.S.C.
§ 924(c) would certainly be a consecutive sentence of not less
than five years. Petitioner's testimony, as well as that of his
family, that Davis advised there would not be much difference
(not more than a year) between a sentence imposed pursuant to a
proffered plea agreement and a sentence received following
conviction by a jury is simply not believable under the
circumstances. Petitioner's testimony also fails to account for
the differences between accepting a plea agreement and receiving
acceptance of responsibility and proceeding to trial, losing
acceptance, and possibly receiving an obstruction adjustment
(see, e.g., Doc. 39 at 6, 11-13). These facts are further
evidence that Petitioner's decision to proceed to trial had
nothing to do with potential sentences, but that decision was
instead based solely upon the fact Petitioner did not believe he
was guilty, would not admit guilt, nor did he believe he would
be convicted. Petitioner's efforts to claim that he was mislead
by the drug treatment early release advice and therefore
declined the plea offers is not credible and assumes that
Petitioner knew, prior to the jury verdict, that he would not be
convicted of the 18 U.S.C. § 924(c) offense. Hindsight always
provides a different view of the potential risks of a trial.

Petitioner has failed to demonstrate a reasonable probability that he would have accepted a plea but for Davis' alleged misadvice and for this reason alone his ground fails.[4]

## IV.  CONCLUSION

For these reasons, Petitioner's allegation of ineffective assistance of counsel lacks merit and will be denied.

**IT IS THEREFORE ORDERED** that Petitioner's motion to vacate, set aside or correct sentence (Doc. 52) is denied for the reasons set forth above and for the reasons set forth in this Court's prior Memorandum Opinion and Order (Doc. 66) and that this action is dismissed.

**IT IS FURTHER ORDERED** that Petitioner's Writ of Mandamus (Doc. 63) is **DENIED AS MOOT** since Petitioner's Writ of Mandamus filed in the Fourth Circuit Court of Appeals is pending on their docket.

---

[4] See, e.g., Johnson v. United States, No. 1:8CR233-1, 1:12CV571, 2015 WL 13273066, at *8 (M.D.N.C. Sept. 28, 2015) (unpublished), report and recommendation adopted, No. 1:08CR233-1, 2015 WL 13239881 (M.D.N.C. Dec. 16, 2015) (unpublished), remanded, United States v. Johnson, 670 F. App'x 159 (4th Cir. 2016) (remanded "for the limited purpose of allowing the district court to determine whether the time for filing a notice of appeal should be reopened"), appeal dismissed, United States v. Johnson, 683 F. App'x 233, 234 (4th Cir. 2017); cf. Merzbacher v. Shearin, 706 F.3d 356, 366-67 (4th Cir. 2013) ("[I]t is entirely clear that to demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible.").

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

This the 2nd day of February, 2018.

_____
United States District Judge